This is case number 4-120-114, Department of Corrections v. Welch. For the appellant, we have Clifford Burlow. And for the appellant, Doug Quibby. And Sharon Purcell. Are you two splitting your time? Have you arranged that with the clerk? Great job. Okay, Mr. Burlow. Justice Turner, and may it please the Court. My name is Cliff Burlow. I'm an Assistant Attorney General, and I'm here on behalf of the Illinois Department of Corrections. This case was originally brought by one of the respondents in this appeal, Ms. Welch. And Ms. Welch is a former prison guard who was dismissed by the Department for repeated violations of safety and security rules at the Robinson Correctional Center during her brief four-and-a-half-month tenure as a prison guard there. Now, it has been the central thesis of her case throughout this that these violations, in essence, were not a big deal. That they didn't warrant any significant or substantial discipline. But they were a big deal in the eyes of the people who are the experts and who have the experience in administering prisons. And that is the Department of Corrections. Specifically, the three violations at issue were providing gum to inmates on several occasions, escorting an inmate from one end of the prison to the other to deliver a burrito, and accepting nachos from one of the inmates. Excuse me, counsel. It's accepting nachos made by one of the inmates, but actually from a fellow officer. That's correct. That's correct, Justice Holder-White. Although there's no ambiguity in the record that she knew that they were nachos that had been purchased by an inmate. And there really doesn't seem to be any ambiguity that there was an understanding that this was ultimately passing through from an inmate to a prison guard. But ultimately, while I will be the first to admit that intuitively these may not seem like a big deal, these do raise serious concerns in the eyes of the Department. And those reasons were articulated very clearly by the Department in the proceedings in this case. Beyond just the specific security concerns at issue, namely that gum can be used to jam up a lock or to make an impression of a key, or that escorting an inmate from one part of the prison to another raises concerns about why inmates are separated and whether there was contraband being transported. I will certainly admit, Justice Holder-White, that the accepting of nachos is probably the least serious of these violations. Well, counsel, the courts of the opinion, they're all very serious, so you don't have to argue that. But ultimately, what these do is they speak to the judgment of Ms. Welch. Well, let me cut right to the chase, as far as I'm concerned. In the Commission's brief on page 27, they say the Department could have, with proper adherence to the rules, terminated Welch during that period for what it considered poor performance. It also had at its disposal the authority to impose a disciplinary suspension and to extend her probationary period. The Department chose not to take any of those actions, and that's why we're here today. That's basically what it says. What's your response to that? Well, my response to that, Justice Turner, is, I think I have several responses to that, but the principal response to that is I think that it's common ground between the parties that Ms. Welch could have been dismissed at any time during her probationary period. And so the fundamental question presented before this Court is whether or not the term of the probationary employment was extended by the 40 days she spent on administrative leave and by the 16 days she spent on disciplinary leave. Well, I guess my answer or response to that would be, if this conduct was that egregious, why wasn't there a termination instead of the type of action that was taken, which now gets us to the question of whether or not the period of probation was extended? Well, the answer to that, Justice Turner, is twofold. First, I think there were, my understanding, and the record is a bit ambiguous on this, I confess, that there are certain union requirements and certain procedural formalities that the Department has contracted with that requires it to not just simply fire someone on the spot, on a dime, in the way that the Commission and Ms. Welch seem to suggest. Even when they're on probation? That's absolutely correct, Justice Turner. Does the record at any point indicate that the Department engaged in the procedural mechanisms that it did, A, administrative leave, and B, being disciplinary, or suspension pending discharge, in order to extend the probationary period because they could not discharge her because of whatever these union requirements might be? Is there anything in the record that would support that implication that you've just mentioned? No, Justice Harris, I don't think that there is a clear point in the record I can point you to where the warden or the assistant warden who would have been the individuals in charge of this said that that was why they took as long as they did. What I do think is very clear is that the Department did not engage in this out of some sort of manipulative attempt to extend the probationary period in the way that the Commission and Ms. Welch suggest. If anything, it suggests that they were very thorough and wanted to be very careful in their investigation and their assessment of the situation. If you look at the timeline here, Ms. Welch was placed on administrative leave on July 2nd. She then had a hearing before the Department on July 7th. Then there was a recommendation that was made on July 13th. That recommendation then went to the warden. The warden deliberated on it until August 4th. And then on August 4th, the decision was made that Ms. Welch should be terminated. So this is not an example of a Commission. If anything, the rule being suggested by the Commission is a rush to the unemployment form. What the Commission's argument is is that the Department should not engage in a thorough evaluation, that the Commission should not carefully assess what a specific wrongdoing at issue was, and instead should simply on impulse fire an employee. That can't be the policy of the Commission. Why would the Commission advocate that type of position? Just to win this one case? I think that may well be the case, Justice Turner. This decision, if you look at the tolling provision itself, the tolling provision says that a probationary employment period will be extended by a leave of absence, a disciplinary suspension, an unauthorized absence, whether it's a sick leave, industrial injury, or a work-related injury. Facially, that seems to apply to every circumstance. And what the Commission has crafted here is a rule that sets administrative leave and suspension pending discharge completely alone and in isolation. And those aren't mentioned in the items that are mentioned that qualify that you just recited for us, correct? Justice Holder-White, my answer to that is yes and no. Yes, it's not specifically mentioned. No, because our position is that administrative leave is one of many different types of leaves of absences. Leave of absence has a broader meaning. Everyone in this case agrees with that, because there's nothing in any of the personnel rules that says that leave of absence has one singular meaning. It is an umbrella that applies to any number of leaves, and that term has a plain meaning. That plain meaning is clear if you look at the Oxford English Dictionary. It's clear if you look at Black's Law Dictionary. It's clear if you look at other judicial decisions. It's clear if you look in the New York Times from two weeks ago when a group of Harvard students were put on an involuntary leave of absence for engaging in, I believe it was hacking, of the Harvard computer system. So the notion that leave of absence doesn't incorporate administrative leave, I think is contrary to the plain meaning of the statute. Administrative leave is paid leave in which a person expects to return. That is exactly what the plain meaning of leave of absence is. Not only that, the purpose for having a tolling provision is undisputed, and it's rather obvious. There's a general understanding that a public employer should have a period of six months to evaluate the competency of an individual to determine whether they are worthy of a longer term employment. Obviously, because Ms. Welch was on 40 days of administrative leave and 16 days of suspension pending discharge, the department lost at least a part of that opportunity. Because of their own actions. Well, Justice Harris, that's certainly true, but that's true of any number of types of leave of absence. If you look at Part 303 of the regulation, subpart B, which is titled leave of absence, among the listed types of leave of absence is a furlough. So I think the Commission's argument comes down to one of the following is true. Either types of leave that are listed under a section headline, leave of absence, do not qualify as a leave of absence when that term is used in Section 300E. Or it is the case that administrative leave stands entirely alone, despite the fact that there is no principal distinction that can be drawn between administrative leave and every other type of leave of absence that fits this description. I'd like to go back, and I'm sorry, but I'd like to go back to that initial decision as to whether or not to discharge during the probationary period versus, A, placing Ms. Welch on administrative leave, and, B, placing her on suspension pending discharge. When those actions are taken, the Department is making a calculated decision that what they are doing will extend the probationary period. And was that decision based upon precedent? Was there a course of practice within the Department for doing that same thing? And has it been acknowledged at some level, before the Commission or before some court, that either of those two will extend the probationary period? Or are we in new territory here? Justice Harris, from all the authorities cited in the briefs, what I can tell you is it seems that we're in new territory here. This decision was based upon the Department's reading of the plain meaning of the regulation, which should have at least some basis. And it was based upon the practice that had existed at the Department for a number of years. You don't place someone on a suspension pending discharge while you're engaged in the investigative process. You don't place someone on a suspension or some sort of disciplinary action when you're still trying to determine what it is that you think is appropriate once you've made your finding as to the relevant facts. You give someone paid leave until you have determined, at least this seems to me to be the prudent approach, until you have determined that there is wrongdoing worthy of significant punishment. And to simply create a rule that incentivizes doing away with prudence makes little sense. That's the fundamental problem that I think exists in the Commission's decision. You cannot create a rule that has this sort of perverse incentive. And if you look at the Commission's decision, which is BALJ's decision, because the Commission itself didn't pass on that, if you look at the Commission's decision, they really offered only three reasons in their actual decision here for why it is that administrative leave and suspension pending discharge don't fit within the regulation. And none of them hold up to scrutiny. What the Commission said first was what Justice Holder White alluded to, which is, well, the regulation doesn't specify administrative leave. Ultimately, that's really non-responsive given the nature of the argument that the Department is advancing, namely that it does list leave of absence and administrative leave fits within the term leave of absence. The second reason given was that a leave of absence is, by definition, a voluntary act. Well, that seems inconsistent with the plain meaning of the term leave of absence and it's inconsistent with the purpose of the tolling provision as a whole. Not only that, I think you can look at any number of types of leave that aren't voluntary by the employee. For instance, if someone is called up for military service, that person is not engaging in a voluntary leave, but that person is absent from work. And it seems to me that the Commission's decision can't possibly stand for the idea that someone in the National Guard does not have their probationary period extended if one day into the term of their service they're called up for two years to go abroad. And the third reason offered was this idea, Justice Harris, that I think you've alluded to, which is that it could be a tool of manipulation, the idea that the Department could indefinitely extend someone's probationary period for its own purposes. That simply doesn't seem to be a real concern here. And the reason is that we're talking about a paid leave of absence. No one is going to pay someone to not come to work. It simply doesn't make sense, unless there is some reason for doing it, and in this case it seems that there was. The desire to engage in a prudent investigation, followed by a prudent evaluation of the facts, and to allow the warden the appropriate term to deliberate on those findings and make a final decision. If anything, the facts of this case illustrate how ill-founded that concern really is. Now, the Commission seems to have shifted gears, at least somewhat, on appeal. The Commission has advanced the idea in its brief that the difference between administrative leave of absence could be the idea that a leave of absence can't be employer mandated. I think that runs contrary to the fact that you have a furlough listed in the leave of absence portion of Part 303. And so, again, the Commission shifts gears yet a third time in its brief and suggests, well, it only applies to the list of leaves in Part 303 as a whole. But I think that creates two problems for the Court from an interpretive standpoint. First, if you look at Part 303, Subpart B, titled Leave of Absence, if you interpret leave of absence in Section 300E, I recognize this gets a bit wonky when I go back and forth this much, you create surpluses in 300E. Because the very first type of leave of absence listed in Part 303 is sick leave. And 300E also mentions sick leave. So you have a redundancy in the regulation if you take that interpretation. Not only that, you're giving definitional authoritative weight to a title of a section. And it is a fundamental canon of construction that we do not give authoritative weight to the titles of a section or the title of a statute. We look at the plain language and we interpret the plain language. Now, even more important, on either of these latter two rationales, the employer-mandated idea or this Part 303 idea, neither of those form the basis of the Commission's decision. So at the very minimum, the fact that the Commission has now decided on appeal as part of the legal argument in a specific case to offer a new interpretation, that would seem to strip the Commission of all deference that they would be entitled to under this Court's precedent in interpreting ambiguous provisions of their own regulations. To be sure, we believe that the regulation is unambiguous. But the term leave of absence has a plain and ordinary meaning, and neither party has really meaningfully rebutted that and instead is offering that leave of absence has a specialized term of art, albeit neither seems terribly inclined to provide a clear definition of what it means. Mr. Berlow, just on one point that you made, and that being the title of a code section not having perhaps a meaning or something that we need to take judicial notice of, administrative leave, yes, that is the title, but also within the body of 302.795, reference is made to administrative leave. It's not just something that someone compiling the code sections put together. It's actually part of the code section. Is that true? Well, that's certainly true, Justice Harris. I suppose my response to that is, first, administrative leave is referenced in the text of 795, to be sure, and it is said it shall not be used in lieu of other leaves. It places administrative leave on equal footing with every other type of leave that is provided for under the personnel rules. So to suggest that the two are anything other than inextricably intertwined seems incorrect. And I think the second aspect of that is that the Commission points out in its brief that 795 was created with a specific intent. It was created in 2005. I want to be clear that the tolling provision long predates the creation of 795, which came along in 2005, in the exact same language that exists now. So prior to the creation of 795, the tolling provision was comprehensive. And when 795 was created, if we take the Commission at its word, it no longer was comprehensive. But I think the second aspect of that is when you look at the reason for creating 795, which the Commission emphasized in its brief, I think the Commission has proved a little bit too much. Because if you look in the Illinois Register where it describes why administrative leave was created, what they say is historically this has been a type of disciplinary suspension and treated under 640 as a disciplinary suspension. So if the Commission is right, it seems to me that the proper thing to do then would be to take administrative leave and treat it as a disciplinary suspension, in which case you would still toll the term of the probationary employment. I don't think the Commission can have it both ways. Now, I want to turn just for a moment to suspension pending discharge, because I think I focused my remarks primarily on the administrative leave question. And regarding suspension pending discharge, I think again, the term disciplinary suspension has a plain meaning. A suspension for a disciplinary purpose has exactly what a suspension pending discharge is. And the fact that someone is on a suspension pending discharge rather than a disciplinary suspension no more reduces the concern about depriving an employer of the opportunity to observe an employee at work than it would if they were on a disciplinary suspension. The reality is what the Commission and Ms. Welch have done is identified a number of distinctions that can be drawn between administrative leave and suspension pending discharge and the terms of the tolling provision in 300E. But none of them have any clear significance under the terms of the regulation. It is all well and good to say these two things are distinct, but you ultimately have to tie up that argument. And to do it, you have to say why those distinctions matter. And that's the shortcoming in the Commission's argument. Counsel, thank you very much. We'll have rebuttal. Mr. Quibby or Ms. Purcell? Good morning, Your Honors. My name is Sharon Purcell and I'm Assistant Illinois Attorney General on behalf of the Illinois Civil Service Commission. The Illinois Civil Service Commission correctly determined that it had jurisdiction to consider Ms. Welch's discharge because she had completed a disciplinary period and the Commission respectfully requests this Court to affirm that decision. Now, the standard of review here is de novo, but it's important to note that the courts do give, defer to decisions and interpretations of rules and decisions by the experts agency that is charged with the interpretation of the rules. And as you may have gathered just from reading these briefs and the arguments, personnel code and its rules are, as the Fourth District in another case described, a dense thicket. And so the fact that there is this Commission with expertise in looking at these rules and understanding what they mean and how they interplay with each other and how they apply across state agencies really matters. Is the Commission in a better position to determine department rules in the department? These are, this is the personnel code and the personnel code and its rules apply, this is the problem, it applies across state agencies and it's important, so that's a lot of the executive agencies. It comprehensively governs the executive agencies and thousands, tens of thousands of employees, most of the employees. So it's important to have clarity in the rules since it is going to be applied not just, for instance, at the department or it's not a rule. Who knows more about the Department of Corrections, the Department of Corrections or the Commission? I would venture to say the Department of Corrections does, but the Commission then knows more about what every agency needs and what clarity, it's a matter of fairness and consistency for both agencies and employees that rules, these personnel code rules be applied consistently across agencies and to employees. It shouldn't mean one thing, for instance, at Robinson Correctional Center and then another thing in another agency. It's the same rule. So whatever is going to apply should apply fairly and consistently. Counsel, I started, I asked a question at the very beginning of your opposing counsel's argument by citing your brief, so I'm going to look at that same language which is found on page 27 where you basically say the department could have discharged, didn't need to do any more investigation, if it was such egregious conduct, could have just got rid of right then and that would have been the end of it. And then counsel said that would be a bad policy for the commission to take when the department itself is trying to look into this fully and investigate it fairly before it makes that decision to discharge. What's your response? Well, first of all, the timeline here is I disagree with the timeline that my opposing counsel set forth. I agree that his voice was placed on administrative leave July 2nd and there was a department hearing on July 7th. The warden, from my reading of the record, concurred that the rules were violated as charged on July 13th. And then there's this time where she's on administrative leave and there's no indication of some intense investigation going on. Okay, maybe I didn't make myself very clear. The specific sentence I'm looking at is the department, or it, also had at its disposal the authority to impose a disciplinary suspension and to extend her probationary period. The department did not take any of those actions. As I understand, you're saying they could have terminated her if they wanted to. Sure. Is that your position? They can. The personnel rules provide that a probationary employee can be terminated. Now, that's going to be up to, you know, as you said, the department or whatever agency. But the commission wants to take the, you want to set a policy here where instead of doing this investigation, just terminate? There's no, I understand that. I understand that concern. And I think that that's a problem. I mean, there's rules because there's going to be conflict. And at some point, you know, rules are going to, somebody's going to be happy, somebody's not going to be happy. Hopefully, I mean, the point being. I guess I'm suggesting be careful what you wish for. Perhaps you're going to win on this appeal. And then you're going to have a situation, as counsel indicated, where when someone messes up on probation, they're not going to take any, they're not going to extend anything. They're not going to give them the benefit of the doubt. They're not going to do further investigation. Terminate. I personally think that might be problematic. I understand that point of view. But the other problem that is problematic as well is that the rules, these rules have to mean something. And they have to mean something that's clear and concise and that can be applied fairly. And if there's an employee that is so egregious that it's not worth the time and effort to extend that probationary period because the probationary period could be extended under the disciplinary suspension. Are you arguing this was one of those instances where it was that egregious? Because your briefs seem to say that. The rule, the commission is only arguing on the language, you know, what the rule means. So, and what the department did, whether or not, you know, what it did extended out the probationary period, you know, except this is what they did. So, but whether, you know, whether or not in any particular circumstance it's going to be, you know, a precipitous termination is, I hate, I almost hate to say it, but it's a function of that. You know, there's a probationary period. The probationary period needs to be, it's finite. It needs to balance the employer's desire to understand. As I understand your interpretation of completing a probationary period, we basically can read out of the administrative code the word satisfactorily because that has nothing to do with it. As long as the period passes, satisfactorily doesn't make any difference. Your Honor, in this case, the, in this case, the department at Robinson Correctional Center used two investigatory tools to extend out probationary period, or rather, so that it. I understand that. What does satisfactorily mean under 302.625? The department's witness, or the department counsel, in the hearing on this matter before the commission pointed to the union employee, the union that represents these particular employees, and said, all that is necessary, because the ALJ specifically asked, is there another test other than this time period? And the answer to that was, I do not believe so. The supplemental agreement provides, here's the timeline. And the department has never provided any explanation as to why it couldn't have put her on some other, you know, extended. You've already argued that you interpret these rules, and you tell us what the language means. My question is, the way you're reading this, 302.625, we can virtually read out of it the term satisfactorily, so it's all surplus. The, no, no. Okay. The satisfactory completion is, we've gotten to this timeline. There's been no evidence. Well, then why can't we just read, who has completed a required period of probation? I just left out satisfactorily. Isn't that what you're just arguing? Finishing that timeline would then be, that's satisfactory, unless there's been something, for instance, she's been put on a disciplinary suspension, and there's some evidence that the agency, whichever agency it is, because this is applicable to all the agencies, are going to have to make this determination. Now, there's nothing that says that they met that period of time, and then afterwards you come back and say, oh, by the way, this was not satisfactory because such and such happened. But that date has come and gone, and there's nothing, nothing has been done to say definitively, this is not satisfactory. And the problem with those two leaves is that an employee can be vindicated. Administrative leave and suspension pending decision on discharge are both investigatory tools that the employer has at its disposal to make these decisions. And so the fact that it's not definitive and the employee can be vindicated, you can have satisfactory, but can you have, the rules have to be, the problem with the department's approach here is that what's going on at Robinson Correctional Center is going to be driving how everybody, all the agencies, are applying these rules. I'm sorry to ask so many questions, Counsel, but you are out of time. Thank you. Thank you, Your Honor. And I again ask that the Commission's decision on this matter be affirmed. Thank you. Thank you. May it please the Court, Counsel. My name is Doug Quibby, and I've had the privilege to represent Correctional Officer Welch during these proceedings. Your Honor, I'd like to start by answering your questions as it relates to satisfactory completion, just a little bit different than my co-counsel said. It's not being read out of the code because if an employee does not satisfactorily complete the probationary period, what is supposed to happen is the state agency is supposed to either suspend them to extend the probationary period, or they're supposed to fire them before the probationary period ends. So because of that, if you do complete it and those two things don't happen, you have satisfactorily completed the probationary period. There's no other step in the process. This is a very difficult concept for me to accept, that a person can violate three rules during the probationary period, be suspended because of those violations, and then reach a conclusion that that is satisfactory compliance with probation. That's not the kind of probation I've ever heard of anyplace else. Your Honor, and it's because she wasn't suspended for that. It's because they totally misused what administrative leave is. If you read it, it's supposed to be extraordinary. It's not in lieu of a suspension. It's not a disciplinary suspension. If they would have suspended her for that, which they could have. For what? For those violations. Instead, they put her on administrative leave. But you're getting caught up in semantics here. I'm talking about satisfactorily completing a probationary period. How can you possibly make an argument that violating rules, violating conditions, is compliance with probation? I just don't follow that. Your Honor, the Sterpa case gives some guidance on that, because in that case, which was an Environmental Protection Agency employee, it's right in the record that George Sterpa has consistently performed at an unacceptably low level of productivity, has not been able to adjust his work attitude and procedures to match the agency's policy, particularly in the area of communications with facilities under surveillance. He did that, but he still successfully completed his probationary period. He did that misconduct, but he successfully completed the probationary period because they didn't fire him during the probationary period. They tried to do it after the fact. I submit that there... You said that's the Sterpa case? Yes, Your Honor. It's 33 LF 3rd 1. And it's cited in your brief? Yes, Your Honor. Okay. I think I did see that. I need to read that, Counsel. Thank you for giving me a heads up on that. I think the real issue here is that probationary employees, and this is from the Farmer case, are entitled to the protections of the personnel code that apply to them. Now, they don't have the same protections that a certified employee does, but they're entitled to that. And one of the things they're entitled to is to not have their probationary period extended unless the agency does it properly. And what is at issue here is the Department of Corrections did not follow what I think are not all that unclear rules, and they, for whatever reason, decided not to follow them. And oh, by the way, the testimony that was at the hearing is this is what Robinson Correctional Facility does in all cases. Even though the plain, clear meaning of administrative leave is that it's only supposed to be used in extraordinary situations, and it cannot be used in lieu of when other leave is appropriate or when any other type of paid or unpaid leave applies. This is it. I submit that this court should affirm this decision, and it will have no effect on how state government operates other than to make it clear that the Department of Corrections and all the other agencies have to properly follow the personnel code on how they treat probationary employees. I've represented a whole lot of state employees to include probationary employees. It's not hard for probationary periods to be extended if there's disciplinary issues. Basically, the director of that agency has two choices. They can do a suspension to extend the period, or they can terminate the employee. That's their options. But if they don't do one of those two things and the employee certifies, then the personnel code applies and the rules apply. And I submit that based on this court's decision in juvenile justice and in other opinions, that the commission's decision was not arbitrary, unreasonable, or unrelated to the terms of the service. I'm not minimizing what Correctional Officer Welch did, but this court doesn't re-weigh the evidence. That's not the standard of review. And the ALJ, and as modified by the commission's decision, is not arbitrary, unreasonable, or unrelated to the requirements of service. I can go into all the other things about what Officer Thompson did, Correctional Officer Brashear, who was the correctional officer that actually gave the nacho to Officer Welch, and they didn't disappoint him at all. They didn't even question him. I can go through all the lists of why this is minimal compared to how other employees were disciplined. But frankly, that's not the standard. The ALJ and the commission has articulated and substantiated the reason why they determined what they did, and their decision is not arbitrary, unreasonable, or unrelated to the requirements of service. Mr. Quibbe, in terms of the commission's action to reduce the suspension from 60 days, which the ALJ had imposed 14 days, the commission's findings, just simply, I put quotes around findings because, simply put, it looks like they changed one word. They characterized the shortcomings as minimal, or the actions or the violations of Ms. Welch as minimal as compared to the ALJ's findings that they were consequential. According to the Austin and the Bell cases, in regards to what is necessary in terms of the expansiveness of the findings by the commission, do you think that just changing that one word, the characterization, was sufficient? Or are we looking at a case where this was conclusory on the part of the commission? Your Honor, I don't think they just changed one word. I think that stating that her infractions were minimal in the context of past practice of Robinson Correctional Center isn't just changing one word. What it's doing, which is what was done in the juvenile justice case, it's putting different emphasis on certain evidence as opposed to other evidence that the ALJ put more emphasis on it. And that was their justification for reducing the amount of time. I think this is almost the exact converse of what the juvenile justice commission case is, where the commission reduced the amount of time based on years of service. And this is the converse of this, where they're reducing it because they consider the infractions less severe. But I think the two cases are very, very similar. And in the juvenile justice case, the Austin and the other case was distinguished.  Thank you. Thank you. Rebuttal, please. Mr. Berlow, I'm not even going to let you get settled in here. Not the first time, Justice Sears. Well, I want to pick up on something that Justice Turner was inquiring about as to the commission and Ms. Welch here earlier, and that was as to the concept of satisfactorily complete. Because I think it really does beg the question, if it simply is a matter of the employee time-wise completing the period of probation, what's the point of inserting the word satisfactorily? And I think that you have addressed that in your brief, that there is a qualitative component to this concept of satisfactorily complete. But as I think about this, if satisfactorily complete has a qualitative aspect to it, wouldn't every single employee who has completed the probationary term time-wise have their status as a certified employee questioned or being subject to being questioned following that probationary period? Because there could have been some perceived shortcoming during that probationary period. What would prevent whichever department or agency it was, after the time frame of that probationary period having elapsed, looking back and saying, oh, but that individual didn't do this job particularly well. It wasn't satisfactory. So what is then really the distinction between a probationary status and certified employee? Justice Harris, I think your point goes to this question of what fills up the space within the word satisfactorily. And I will not pretend that I'm able to offer the Court a comprehensive definition to the word, or maybe definition isn't the right word, but every single conceivable aspect. What I can say is that at a minimum, it has to mean that you were not on the verge of being fired on the day that you completed your probationary term. You were not on the cusp of losing your job because of violations that were serious enough to call into question your competence and your judgment by your employer. So I think my response to you, Justice Harris, is there may be some line drawing that has to be done with this element. And I agree with Justice Turner that it can't simply be surpluses, or at least the premise of some of Justice Turner's questions. But at a minimum, it seems to me that this can't possibly be satisfactory completion. I want to also go back to, Justice Turner, you asked several questions I think that began from the policy concern that I articulated during the first part of my argument this morning regarding what I called the rush to the unemployment line, the rush to fire an employee, which is what the Commission's decision I think undoubtedly incentivizes. The Commission's response to that ultimately was that the Department never explained why they couldn't have put her on some other sort of leave. Well, I think the answer to that question is actually pretty simple. They were more forgiving than the Commission thinks they should have been. To the Commission, it seems that by imposing what is frankly a lesser sanction, paid leave from work in order to make an evaluation, that the Department should be punished instead of simply firing her or putting her on some sort of other suspension. That in essence, a more severe penalty would withhold the time for the probationary employment, while a less severe sanction would not. That simply cannot be the case. And candidly, I think that creates an intolerable circumstance for the Department and any other state agency. That will almost inevitably open up the employer to any number of wrongful termination suits or wrongful suspension lawsuits or wrongful discipline lawsuits if they are basically being asked to shoot first and ask questions later. So, Counsel, can you enlighten us? What took place during that time that she was on that suspension? What investigation? What were they doing? The warden already signed off, so what comes after that? Well, I think the warden signed off on the fact that there were violations. The warden was engaged in deliberations to determine whether or not these were dismissible offenses. And I'm talking about after the warden came back and said, I find violations. During that period of time, I think it's like any other bifurcated trial. You have a determination about liability, and then you have a determination regarding damages separately. And the warden, I think, is entitled to sit there and reflect, given all the other things the warden does, and determine whether or not this is a dismissible offense or not. The Commission really tries to build its case around the idea that it gets deference, but there is no dispute that this is on the issue of law presented de novo, and whatever deference the Commission receives, it is not entitled to a rule that ultimately, from a purely practical standpoint, simply makes no sense and is counter-textual. And for that reason, I urge the Court to exercise its own discretion and to reverse. Thank you, Counsel, and thank you to all three of you, in fact. The case is submitted, and the Court stands in recess until 1 o'clock.